Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/14/2023 09:05 AM CDT

Amber L. Hudson, now known as
Amber L. Cozad, appellant, v.
Anthony D. Hudson, appellee.
___ N.W.2d ___

Filed March 14, 2023.    No. A-22-189.

1. **Modification of Decree: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court.

2. **Pleadings: Due Process: Words and Phrases.** A court's determination of questions raised by the facts, but not presented in the pleadings, should not come at the expense of due process. While the concept of due process defies precise definition, it embodies and requires fundamental fairness.

3. **Constitutional Law: Due Process.** Generally, procedural due process requires parties whose rights are affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the constitution or statute; and a hearing before an impartial decisionmaker.

4. ____: ____. The determination of whether the procedures afforded to an individual comport with constitutional requirements for procedural due process presents a question of law.

5. **Rules of the Supreme Court: Pleadings: Implied Consent.** The key inquiry of Neb. Ct. R. Pldg. § 6-1115(b) for express or implied consent to trial of an issue not presented by the pleadings is whether the parties recognized that an issue not presented by the pleadings entered the case at trial.

6. ____: ____: ____. Implied consent for purposes of Neb. Ct. R. Pldg. § 6-1115(b) may arise in two situations: First, the claim may be introduced outside of the complaint—in another pleading or document—and then treated by the opposing party as if pleaded. Second, consent may be implied if during the trial the party acquiesces or fails to object to the introduction of evidence that relates only to that issue.

7. **Implied Consent: Proof.** Implied consent may not be found if the opposing party did not recognize that new matters were at issue during trial. The pleader must demonstrate that the opposing party understood that the evidence in question was introduced to prove new issues.

8. **Pleadings: Judgments.** Even when a party does not move to amend pleadings, a court may constructively amend pleadings on unpleaded issues in order to render a decision consistent with the trial.

9. **Pleadings: Appeal and Error.** Permission to amend a pleading is addressed to the discretion of the trial court, and an appellate court will not disturb the trial court's decision absent an abuse of discretion.

10. **Modification of Decree: Child Support: Proof.** A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification which was not contemplated when the prior order was entered.

11. **Divorce: Modification of Decree: Child Support.** The paramount concern and question in determining child support, whether in the initial marital dissolution action or in proceedings for modification of decree, is the best interests of the child.

12. **Divorce: Modification of Decree.** A change of circumstances not within the reasonable contemplation of the parties at the time of the decree may be the basis for modification of a decree.

13. **Divorce.** Although a parent may have contemplated incurring childcare expenses at some point in the future, many items within the realm of contemplation at the time of dissolution remain uncertain or speculative.

14. **Divorce: Modification of Decree.** To determine whether to modify an award with respect to childcare expenses, it is necessary for the court to compare the need for work-related childcare at the time of the original decree with the need for such childcare at the time of the modification hearing.

Appeal from the District Court for Cherry County: Mark D. Kozisek, Judge. Reversed and remanded with directions.

Loralea L. Frank, of Bruner, Frank, Schumacher, Husak & Simpson, L.L.C., for appellant.

Michael J. Synek for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Amber L. Hudson, now known as Amber L. Cozad, appeals from an order of the Cherry County District Court modifying the decree dissolving her marriage to Anthony D. Hudson. She claims multiple errors relating to the district court's failure to grant her childcare expenses. We reverse the district court's decision declining to address childcare expenses and remand the matter with directions to apportion childcare expenses from the time of trial forward. Any decision regarding a retroactive childcare award is at the trial court's discretion based on the evidence adduced at trial, which we set forth in detail in this opinion to assist on remand.

## II. BACKGROUND

### 1. JULY 2020 DECREE

Amber and Anthony married in 2011 and had two children—Riley Hudson, born in 2016, and Callie Hudson, born in 2019. The parties' marriage was dissolved by decree on July 30, 2020. Anthony was not represented by counsel at that time; Amber has been represented by the same counsel throughout the dissolution and modification proceedings. The decree was entered pursuant to a "Marital Settlement Agreement"; it gave Amber sole legal and physical custody of the children, subject to Anthony's parenting time. The parenting plan incorporated in the settlement agreement stated that Anthony's parenting time included "one weekend visitation per month . . . in Valentine, Nebraska," as well as "four (4) weeks of summer parenting time . . . each summer commencing summer 2024." The parenting plan further specified that Anthony would be responsible for all transportation necessary for him to exercise his parenting time.

The child support calculation included in the decree showed gross taxable income of $4,828 per month for Anthony and $1,560 per month for Amber. It also included "Gross Unearned Taxable Income" of $2,200 per month for Anthony. Anthony was attributed a net monthly income of $5,067.48 on which child support was calculated. This resulted in an order that Anthony pay $1,100 per month in child support for the parties' two children.

The decree stated that the parties would each be responsible for 50 percent "of the out-of-pocket medical expenses of the minor children." The decree also included the following provision:

> It is further ordered that pursuant to the Nebraska Child Support Guidelines §4-212, both parents shall share in all reasonable and necessary direct expenditures made solely for the child(ren) such as clothing and extracurricular activities shall be allocated between the parents for the minor children of which they participate in. [Anthony] shall be responsible for 50% and [Amber] shall be responsible for 50% of the cost.

The decree was silent as to childcare expenses.

## 2. Amber's Complaint for Modification

A little over 4 months after entry of the July 2020 decree, Amber filed a "Complaint for Modification" on December 8. It alleged that the decree did not order daycare because the minor children were not attending daycare, but that since that time, Amber was employed full time and was incurring daycare costs. Anthony entered a voluntary appearance on February 23, 2021, and a month later on March 24, Amber filed a "Dismissal" of her modification action.

## 3. Anthony's Complaint for Modification

A week after Amber's dismissal of her modification action, Anthony filed a "Complaint for Modification" on March 31,

2021. He alleged there had been a material change in circumstances since the entry of the decree because he had "changed jobs" and his "gross income . . . decreased below . . . $4,828 per month." He also moved to Lincoln, Nebraska; remarried; and planned to move to Pennsylvania. The complaint further stated that the order improperly included the provision relating to clothing and extracurricular activities, because Anthony did not agree to the inclusion of the provision and Neb. Ct. R. § 4-212 (rev. 2011) of the Nebraska Child Support Guidelines "only applies to cases when a specific provision for joint physical custody is ordered and each party's parenting time exceeds 142 days per year."

Anthony requested that the district court modify the decree to reduce his child support obligation, terminate the provision relating to clothing and extracurricular activities, grant the parties joint legal custody, and increase Anthony's parenting time. He also requested that the court require Amber to "bear part of the cost for transporting the children to and from [Anthony's] parenting times."

Amber filed an "Answer and Counterclaim" on August 5, 2021, wherein she denied the material allegations of Anthony's complaint and further asserted that Anthony had already "moved outside of the jurisdiction of Nebraska." She made various allegations related to Anthony's absence from the children's lives in support of her position that the district court should require supervision during Anthony's parenting time with the children or reduce his parenting time. She further asserted that "[i]t is appropriate to modify the child support obligation and associated out of pocket expenses in accordance with the Nebraska Child Support Guidelines."

### 4. Pretrial Proceedings

On December 16, 2021, the parties filed a "Joint Final Witness and Exhibit List." The list of possible witnesses included Brenda Stankoski and Jim Fox, Amber's daycare providers. The document also listed "[d]aycare receipts for

minor children" as one of Amber's exhibits. In the document, the parties marked each anticipated exhibit with an "A," "B," or "C." The pretrial order, which we further discuss below, explained the markings. Exhibits marked with an "A" included those that would be "admitted without objection upon offer by either party." The parties waived foundational objections to the exhibits marked with a letter "B." The parties reserved all objections on exhibits marked with a "C." The "[d]aycare receipts" were marked with a "C."

On December 17, 2021, the district court held a pretrial conference at which time the parties discussed the issues to be litigated at trial. Anthony's counsel indicated that the issues to be litigated included "modification of child support and related issues, which would be the financial issues[,] . . . modifications in the parenting plan" due to Anthony's move to Pennsylvania, and legal custody of the children. When asked by the court what Amber pled in her counterclaim, Amber's counsel stated, "[m]odification and child support and agree to the material change and that he lives in Pennsylvania." Anthony then entered a general denial of Amber's counterclaim. The parties also discussed the "Joint Final Witness and Exhibit List" with the court. When the court inquired about the exhibits marked with a letter "C," Anthony's counsel stated that he reserved his objections to those exhibits because he had not yet reviewed them.

Later that day, the district court entered a pretrial order, where it identified the following as "the legal and factual issues":

> (1) Modification of parenting plan as to time, place and manner of parenting time based upon [Anthony's] move to the State of Pennsylvania;
> (2) Apportionment of costs associated with parenting time;
> (3) Modification seeking joint legal custody;
> (4) Modification of child support[;]
> (5) Attorney fees and costs[.]

The order then stated that the issues identified in the order "do not preclude any other issues properly raised by the pleadings."

## 5. Trial

Trial took place on February 4, 2022. The parties had reached agreement on several issues, including that there was a material change in circumstances warranting modification of Anthony's child support obligation and that the district court should terminate the clothing and extracurricular activities provision from the decree. Each party testified, along with Anthony's new wife, and multiple exhibits were received into evidence.

### (a) Amber's Opening Statement

Amber's counsel indicated during her opening statement that "[Amber's] position is if the Court is going to retroactively decrease [Anthony's] child support, based on his request, then he should be required to, in fact, contribute to his percentage on that retroactive support for purposes of daycare expenses that [Amber] was incurring during that time." The district court questioned whether Amber had "pray[ed] for" childcare expenses in her counterclaim. Amber's counsel argued that because child support was generally at issue, so too were childcare expenses. She further stated that at the time the decree was entered, Anthony's child support obligation was calculated to include childcare expenses, but that this was not noted in the record.

### (b) Anthony's Testimony

Anthony testified regarding his financial circumstances and his recent move out of state. He had previously served in the U.S. Army from 2008 through 2013, including serving a year in Afghanistan. He was honorably discharged from the military, and due to disabilities sustained during his service, he received approximately $1,100 per month in nontaxable disability pay. According to Anthony, at the time he and Amber

divorced, his gross earned taxable income was not actually $4,828 per month as reflected in the child support calculation. He was in fact working 40 hours per week "plus normally anywhere from 10 to 15 hours of overtime," earning $16.50 per hour. Anthony's counsel pointed out that for Anthony's gross earned taxable income to be $4,828 per month, he would have to have been earning a higher wage of approximately $27.85 per hour. At the time of the divorce, Anthony moved to Lincoln, Nebraska, and his pay rate had changed four times since the divorce. He had most recently obtained employment with a private security company in Pennsylvania, where he would be working 50 hours per week at a rate of $22.10 per hour. Anthony remarried in February 2021 and moved to Pennsylvania with his wife in August 2021.

During cross-examination of Anthony, Amber's counsel asked Anthony whether he "underst[oo]d that now that child support is decreasing, [he would] need to contribute to the daycare costs for the minor children," to which Anthony responded, "Yes, ma'am, I don't have a problem with that." The district court then interjected, asking the parties whether "there [was] an agreement on daycare." Anthony's counsel stated that the parties had not reached agreement on the issue, adding, "[i]n fact, my argument was going to be similar to your comments at the beginning. I don't think it was pleaded." However, on redirect, the following colloquy took place between Anthony's counsel and Anthony:

> [Counsel:] Okay. The child care is something that you and I have talked about and you said you're willing to pay it, and that's if the Court orders it, you're willing to pay whatever the Court orders, right?
> [Anthony:] Yes, sir.
> [Counsel:] You're going to follow the Court's orders?
> [Anthony:] Yes, sir.
> [Counsel:] As far as whether or not the Court is going to order it or if it's been properly pleaded, you can't say at this point, right?
> [Anthony:] No, sir.

### (c) Amber's Testimony

Amber testified about her childcare needs and associated costs. She stated that the children both go to daycare "full time"; "Callie goes to Brenda Stankoski; Riley spends most of his daycare time with [Amber's] grandpa, Jim Fox." Amber stated that she had incurred childcare expenses in 2021 and continued to incur childcare expenses in 2022. Amber's counsel asked Amber whether she was requesting that Anthony "pay daycare effective [sic] a new order." Anthony's counsel objected to the question as "beyond the scope of the pleadings." The district court overruled the objection. Anthony's counsel then made a "continuing objection on [the] topic," which the court noted. The court allowed the remainder of Amber's evidence related to childcare expenses without conditioning its admissibility to any later findings by the court.

Amber testified that she was requesting that Anthony be required to contribute to childcare expenses "based on the percentage of the child support calculation." She also requested a credit for the childcare expenses she had incurred in 2021. She stated that she pays Fox $240 per month for childcare and pays Stankoski $25 per child, per day, in addition to a weekly $10 charge for food. The district court asked whether there were "cancelled checks or bank statements that . . . show [the] payments" to Fox. Amber's counsel indicated that she had evidence relating to the payments and further stated that Anthony's counsel stipulated to the admissibility of the evidence. Anthony's counsel did not contest this statement. Amber's counsel then offered into evidence exhibit 9, which included a written statement signed by Fox, stating that in "2021 [Amber] paid [him] $240 a month, for a sum of $2880 for the year for daycare for Riley and Callie." Exhibit 9 also included two emails from Stankoski: the first stated that "Amber paid $5926.00 for daycare" for Riley and Callie in 2021, and the second stated that she would be charging "$25 per day per child" in addition to a $10 weekly charge for each child. Anthony's counsel specifically stated that he had

"[n]o objection" to exhibit 9, after which the court received the exhibit into evidence.

During cross-examination, Amber testified that in 2020, she worked "one or two days [a] week . . . from 7 to 3," but that she spent the rest of her time throughout the week with the children. Anthony's counsel questioned Amber about her current work schedule and the children's corresponding day-care attendance. The following colloquy took place between Anthony's counsel and Amber:

[Counsel:] . . . What's the time that you clock into work . . . ?

[Amber:] Between 8 and 8:30. I'm not able to drop my kids off at daycare until 8 o'clock.

[Counsel:] And what time does your day end at [work]?

[Amber:] . . . Depends on the day, what I'm doing. Anywhere from — Last night I got home at 6:30.

[Counsel:] What's your normal — what's your average time?

[Amber:] 40 hours a week.

[Counsel:] What's your average time you end your workday?

[Amber:] I try to get back by 5 o'clock because that's when daycare closes.

[Counsel:] But sometimes you work longer.

[Amber:] Correct.

[Counsel:] Now, is Riley going to school at Valentine Public School?

[Amber:] Yes.

[Counsel:] What grade?

[Amber:] He is a preschooler.

[Counsel:] What time does he have to be at school?

[Amber:] 12 o'clock.

[Counsel:] What time does school end?

[Amber:] 3:30.

[Counsel:] When Riley's at school, are you still paying the daycare for him to [Fox]?

[Amber:] I pay [Fox] costs for food and costs for gas to take him back and forth to school. I don't actually pay daycare/babysitter. It's cost of food and cost of gas. That's an expense —

[Counsel:] So that 240 amount that's on Exhibit 9 is not actually a daycare cost, you're just reimbursing for food and gas?

[Amber:] That's whatever you want to call it. I consider it daycare, child care. Child care.

[Counsel:] How many hours a day is Riley spending with [Fox] for daycare?

[Amber:] It really depends. Usually from — I would say 8:30, until he goes to school; after school until anywhere between 5 and 6.

And if I am not back to get Callie from daycare, my mom will get her and take her to [Fox's] until I'm off work.

[Counsel:] What hours is Callie in daycare?

[Amber:] 8, 8:30 to 5.

[Counsel:] And so the daycare quotes you have, the $25 a day, that's just for Callie?

[Amber:] Riley goes on Fridays when he does not have school.

THE COURT: Wait a minute. I thought he was with [Fox].

[Amber:] Most every day but Friday. Sometimes he does go another day during the week, also. That's why the — why the cost for [Fox] is an average.

[Counsel:] Does [Fox] ever give you any money back? You pay him 240; does he ever give you anything back?

[Amber]: He does not.

[Counsel]: Does he ever say you don't have to pay me 240?

[Amber]: He might have said it, but I still don't feel that's right, because he is incurring those charges. He shouldn't have to take that expense.

### (d) Closing Arguments

During closing arguments, Anthony's attorney argued that childcare had not been pled and that pleading out-of-pocket expenses "does not signify that you want a change in . . . child care. If you want to change child care, plead child care." Anthony's attorney argued that nothing was mentioned about childcare during the pretrial conference. Amber's attorney responded that "under a notice pleading requirement . . . [i]t's clearly pled as an out-of-pocket expense and it's clearly articulated within the guidelines." The court interjected, stating, "Don't tell me it's clearly pled because it isn't. You pled for generic out-of-pocket expenses and then we had a pretrial conference, we identified the issues, and that was certainly not one of them that was raised." Amber's attorney argued that there was no "unfair surprise," Anthony's counsel had a copy of the childcare expense, and there had been correspondence about it.

### 6. District Court's Orders

A week after trial, on February 11, 2022, Amber filed a "Motion to Amend the Pleadings to Conform to the Evidence." In her motion, she stated that "[e]vidence of substantial daycare costs [was] presented at trial[] without objection of the opposing party." As such, she claimed the issue was tried with the implied consent of Anthony. She requested that the district court "allow the pleadings to be amended to conform to the evidence produced at trial." No notice of hearing was included in the motion.

On February 23, 2022, the district court entered an "Order on Trial Stipulations" where it accepted the trial stipulations attached to the order. The parties' "Trial Stipulation" set forth "the existence of certain facts" and the parties' agreement "to the resolution of certain issues." Toward the end of the document, there is a list of issues under the subheading, "Remaining unresolved issues recited at the commencement of the final hearing[,]" which included items lettered "l." through

"s.," all typed, followed by a handwritten item "t. Retroactive Day Care."

On February 25, 2022, the district court entered an order modifying the parties' decree. Sole legal and physical custody of the children remained with Amber, subject to the "Amended Parenting Plan." The court found that Anthony had proved a material change in circumstances warranting modification of child support. As such, the court reduced Anthony's child support obligation to "$834.00 per month when there are two children subject to the order, and $579.00 per month when there is one child subject to the order." The modification was applied retroactively beginning April 1, 2021, the day after the action was filed. As such, the court found that Anthony had "'overpaid' by $4,896" and credited that amount "first against his attorney fee obligation and then to his support obligation."

The court declined to require Amber to pay transportation costs associated with Anthony's exercise of his parenting time. It pointed out that the parties "originally agreed that Anthony would be responsible for all transportation costs knowing he would be living a significant distance from Valentine." Anthony was living in Lincoln at the time. The court observed, "Now those costs have substantially increased because of his second move to Pennsylvania" and he "now wants Amber to pay a portion of those increased costs." The court concluded that the "equities of the case do not compel that outcome." The court stated that Anthony made the move knowing his children lived in Valentine and that Amber should "not be required to pay for the increased costs associated with that unilateral decision."

The district court did not award Amber childcare expenses. The February 25, 2022, modification order explained:

> The first time the court heard that daycare (childcare) was at issue was at trial. That subject had not been broached in the pleadings nor at the Pretrial Conference when the pending issues were specifically identified. Amber

argues that her generalized request for modification of child support and "associated out of pocket expenses" in accordance with the [Guidelines] properly placed the day care matter at issue. Under her interpretation of notice pleading any expenditure of money is "out of pocket" and there would be no limit to the issues raised at trial or to the relief requested if it involves money. Such an expansive interpretation is unwarranted. And while issues not raised by the pleadings may be tried by express or implied consent of the parties, no such consent was given. Anthony objected to the testimony regarding daycare as beyond the scope of the pleadings.

Pleadings frame the issues . . . . Procedural due process is at play. Amber did not plead a material change in circumstances nor did she request an award of childcare expenses until the time of trial.

When reviewing the pleadings it is apparent that the apportionment of direct expenses per §4-212 of the Guidelines was the issue. The Decree, prepared by Amber's counsel, erroneously included that language because no joint custody had been awarded. Both parties recognized the mistake. It seems much more probable that Amber was referring to the apportionment language relating to a joint custody arrangement and those out of pocket expenses rather than to a previously unmentioned and unaddressed day care issue.

Amber labors under the misconception that childcare is "an associated out of pocket expense" of child support; that the two go hand-in-hand. If child support is in play [then] so too are childcare expenses. . . .

The nexus Amber seeks is not found in the Guidelines. . . .

Amber also ignores fundamental law that requires proof of a material change in circumstances before a decree will be modified. There was no evidence of any material change regarding childcare expense[s] since the Decree was entered; only the tit for tat. In fact,

Anthony's income is now less . . . . [T]hat cannot be the material change warranting an award of childcare expenses at this juncture. Nor is Anthony's move to Pennsylvania a material change warranting modification and an initial award of childcare expenses.

Day care was not an issue at the time the Decree was entered; it was not awarded nor was it even mentioned. In opening Amber suggested that the parties bartered child support for day care at the time settlement was reached. The income information presented to the court and the child support calculation attributed roughly double Anthony's actual income to arrive at the child support suggesting he had no bartering skills. Moreover, the court notes Anthony was not represented and doubts he had the legal sophistication to barter for anything, let alone an increase in support in exchange for paying no childcare costs. Amber's attorney certainly should have known the difference between child support and childcare and using an incorrect income amount to determine child support was improper. Bottom line, Amber now seeks to add something after the fact and also have it relate back in time without any showing of a material change. The court declines to do so.

On March 21, 2022, Amber timely appealed from the district court's February 25 "Order Modifying Decree."

### III. ASSIGNMENT OF ERROR

Amber assigns that the district court abused its discretion by not modifying its prior decree to require Anthony to pay childcare expenses. As part of that assignment of error, she identifies five ways in which the district court erred: (1) finding she had not properly pled for relief related to childcare expenses, (2) not finding that Anthony received sufficient notice that childcare expenses would be an issue at trial, (3) not finding that Anthony consented to raising the issue of childcare at trial, (4) not scheduling for hearing her motion to

amend the pleadings to conform to the evidence, and (5) not finding a material change in circumstances warranting modification of the decree to include childcare expenses.

## IV. STANDARD OF REVIEW

[1] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020).

## V. ANALYSIS

This case provides a good example of the importance of carefully drafting pleadings. It also demonstrates, however, that inadequate pleadings need not preclude an equitable outcome, especially when considering the best interests of a child.

### 1. Adequacy of Pleadings

Amber contends the district court erred when it found she did not properly plead childcare expenses in her counterclaim. We find no error in the court's finding in that regard. Amber's counterclaim alleged a material change in circumstances affecting the children's best interests such that "custody and parenting time of the parties" should be modified. Seven of the eight reasons listed thereafter related to parenting time. The final allegation states, "It is appropriate to modify the child support obligation and associated out of pocket expenses in accordance with the Nebraska Child Support Guidelines." Amber argues that childcare expenses are a part of "associated out of pocket expenses." This argument is not persuasive, especially when keeping her counterclaim language in context with Anthony's complaint, which alleged that the decree contained a provision related to each parent's 50-percent contribution to the children's reasonable and necessary direct expenditures, such as clothing and extracurricular activities, despite there being no provision for joint physical custody. Further, as Anthony points out in his brief, just prior to the filing

of his complaint to modify, Amber had filed a complaint to modify specifically seeking childcare expenses in which her request for childcare expenses was clearly stated; it was not couched in terms of out-of-pocket expenses. Amber dismissed that action immediately prior to the filing of Anthony's complaint, and yet the specific request for childcare expenses was not renewed in Amber's counterclaim. Although we agree with the district court that childcare expenses were not properly pled, that does not end our analysis. We must also consider whether there was sufficient notice to and consent by Anthony to litigate the issue, and we must determine whether it was an abuse of discretion for the district court not to consider those same factors when declining to award childcare expenses for the parties' two minor children.

## 2. Notice and Consent to Litigation of Childcare Expenses

Amber contends that even if her pleading was insufficient, the district court should have found that Anthony had sufficient notice childcare expenses would be an issue at trial and that he impliedly consented to litigate the issue.

### (a) Notice

[2-4] A court's determination of questions raised by the facts, but not presented in the pleadings, should not come at the expense of due process. *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022). While the concept of due process defies precise definition, it embodies and requires fundamental fairness. *Id*. Generally, procedural due process requires parties whose rights are affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such

representation is required by the constitution or statute; and a hearing before an impartial decisionmaker. *Id*. The determination of whether the procedures afforded to an individual comport with constitutional requirements for procedural due process presents a question of law. *Id*.

When Amber introduced the issue of childcare expenses by identifying childcare receipts and witnesses in the "Joint Final Witness and Exhibit List" filed in December 2021, no objections were raised, although objections were reserved. The record indicates that prior to trial, Anthony's counsel discussed litigation of the issue with Amber's counsel and stipulated to the admissibility of the "[d]aycare receipts." Although Anthony's counsel had marked the "[d]aycare receipts" with a "C" on the "Joint Final Witness and Exhibit List," indicating that he had reserved all objections to the evidence, he stated during the pretrial conference that he had done so because he had not yet received a copy of these and other exhibits. Notably, there was no surprise by Anthony at trial when he was asked by Amber's counsel whether he understood that with child support decreasing he would need to contribute to daycare costs for the children. Anthony responded, "Yes, ma'am, I don't have a problem with that." Additionally, Anthony confirmed his counsel's statement that childcare was something he and his counsel had talked about and that Anthony was willing to pay it if the court ordered it. The record supports our conclusion that Anthony had sufficient notice childcare would be an issue at trial and that therefore, procedural due process was satisfied.

### (b) Implied Consent

We next consider Amber's argument that Anthony impliedly consented to litigation of childcare expenses and therefore, the district court should have granted her "Motion to Amend the Pleadings to Conform to the Evidence." The amendment of a pleading is governed by Neb. Ct. R. Pldg. § 6-1115. Section 6-1115(b) provides in part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

[5] The key inquiry of § 6-1115(b) for express or implied consent to trial of an issue not presented by the pleadings is whether the parties recognized that an issue not presented by the pleadings entered the case at trial. *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 858 N.W.2d 196 (2015). Amber does not allege that Anthony gave express consent to litigation of childcare expenses. As such, we limit our analysis to implied consent.

[6,7] Implied consent for purposes of § 6-1115(b) may arise in two situations. See *United Gen. Title Ins. Co. v. Malone, supra.*

"'First, the claim may be introduced outside of the complaint—in another pleading or document—and then treated by the opposing party as if pleaded. Second, consent may be implied if during the trial the party acquiesces or fails to object to the introduction of evidence that relates only to that issue.

"'Implied consent may not be found if the opposing party did not recognize that new matters were at issue during trial. The pleader must demonstrate that the opposing party understood that the evidence in question was introduced to prove new issues.'"

*Id*. at 1028-29, 858 N.W.2d at 216.

Anthony argues that he could not have consented to litigation of childcare expenses, because he objected to the topic during trial. We acknowledge that Anthony made a continuing objection to the issue of childcare expenses on the

ground that it had not been pled in Amber's counterclaim; the district court permitted the continuing objection. Therefore, the second manner in which implied consent may arise as described above—by acquiescing or failing to object to the evidence (at least in part)—is not supported by the record. However, the record does show that Anthony impliedly consented to litigation of childcare expenses under the first situation described above, in that the claim for childcare expenses arose at least implicitly at the pretrial conference via the joint pretrial document submitted to the court at that time. In the December 2021 "Joint Final Witness and Exhibit List," Amber listed "[d]aycare receipts for minor children" as an exhibit and named Stankoski and Fox, Amber's childcare providers, as possible witnesses. Anthony was aware of Stankoski's and Fox's roles as childcare providers because Amber had provided Anthony the "[d]aycare receipts" which stated the amounts Stankoski and Fox had each charged Amber for childcare services in the past and the rates they would charge Amber in the future. Although it is possible that Fox's testimony could have been relevant to a properly pled claim, the "[d]aycare receipts" and Stankoski's testimony could only have been relevant to the issue of childcare expenses. As such, Anthony had notice that childcare expenses, an issue not specifically pled, had entered the case.

Further, § 6-1115(b) provides in part:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

While Anthony did object at trial on the ground that childcare expenses were not an issue pled in Amber's counterclaim, a trial court may nevertheless allow the pleadings to be

amended "and shall do so freely" when the merits of the action will be furthered and the admission of such evidence will not prejudice the objecting party. See § 6-1115(b). Anthony cannot demonstrate prejudice, since he confirmed his attorney's statements that childcare was something the attorney and he had talked about and that Anthony was willing to pay it if the court ordered it. Additionally, when Amber's counsel asked Anthony whether he "underst[oo]d that now that child support is decreasing, [he would] need to contribute to the daycare costs for the minor children," Anthony responded, "Yes, ma'am, I don't have a problem with that." Also, when exhibit 9, which contained Stankoski's and Fox's childcare charges, was offered, Anthony's attorney specifically stated there was no objection to its receipt by the court.

In summary, we agree with Amber that there was sufficient notice to Anthony regarding the issue of childcare and that based upon the record as described above, Anthony impliedly consented to litigating the issue. That leaves the question of whether the district court abused its discretion by not allowing Amber to amend her pleading to conform to the evidence.

### 3. Request to Amend Pleading
### to Conform to Evidence

This case was tried on February 4, 2022. Amber filed her motion to amend the pleadings on February 11, but did so without scheduling it for hearing. The district court entered its modification order on February 25. Amber claims the court should have scheduled a hearing on her motion and that the court's issuance of "a final order before a hearing on the motion could occur was an abuse of discretion." Brief for appellant at 13.

On the other hand, Anthony claims the district court did not have to consider Amber's motion to amend the pleadings, because she failed to comply with the local district court rule that requires any motion to be accompanied by a notice of the date and time of the hearing and that states the court

"'may decline to hear any motion which is not accompanied by such notice of hearing and proof of service.'" Brief for appellee at 23 (emphasis omitted) (quoting Rules of Dist. Ct. of Eighth Jud. Dist. 8-3).

[8,9] Although Anthony raises a valid point, we are also mindful that "[e]ven when a party does not move to amend pleadings, a court may constructively amend pleadings on unpleaded issues in order to render a decision consistent with the trial." *Simons v. Simons*, 312 Neb. 136, 160, 978 N.W.2d 121, 143 (2022). Therefore, regardless of whether Amber followed proper procedures for placing the issue of amendment before the court, we can consider whether the district court abused its discretion by failing to constructively amend the pleadings in order to render a decision consistent with the trial and evidence related to the request to modify childcare expenses. See *Simons v. Simons, supra* (permission to amend pleading is addressed to discretion of trial court, and appellate court will not disturb trial court's decision absent abuse of discretion).

In this case, the issue of childcare expenses was fully litigated. Amber provided testimony and submitted evidence to the district court regarding her past and future childcare expenses. Anthony thoroughly cross-examined Amber about her work schedule and resulting childcare needs, as well as the cost of childcare services for each of the children. Anthony stated there was no objection to the receipt of exhibit 9, which contained Stankoski's and Fox's childcare charges for 2021 and going forward. Additionally, the district court questioned Amber about whether she actually paid the amounts for childcare reflected in the exhibits. The following colloquy took place:

> THE COURT: I draw a distinction between saying I'm paying [Fox] $240 a month and actually paying it. That's what I was wondering about.
>
> [Amber's counsel:] Are you actually paying that daycare cost, [Amber]?

[Amber:] Yes, I do.

[Amber's counsel:] And how did you pay that? Did you write checks . . . ?

[Amber:] Paid him in check.

Exhibit 9 was offered and received at that time, with Anthony's counsel specifically indicating "[n]o objection to that." The court then inquired:

THE COURT: So have you paid [Fox] $240 for 12 months in 2021?

[Amber:] I did.

THE COURT: And then have you paid him $240 per month for . . . this month?

[Amber:] Yes, for —

THE COURT: For January, excuse me?

[Amber:] For January and February, yes.

THE COURT: Okay.

Because Anthony had notice that Amber intended to litigate the childcare issue at trial and had the opportunity to thoroughly examine Amber on the issue, the court should have constructively amended the pleadings in order to render a decision consistent with the evidence received at trial. We therefore find that the court abused its discretion when it declined to consider Amber's request for an allocation of childcare expenses between the parties based solely on the reason that the issue was not properly pled. However, before directing a remand on the apportionment of childcare expenses, we must also consider whether the district court abused its discretion in concluding there was no material change in circumstances related to those childcare expenses.

### 4. Material Change in Circumstances

In its February 25, 2022, modification order, the district court set forth the issues identified at the pretrial conference, which included, "Apportionment of costs associated with

parenting time." Additionally, the court set forth the issues identified at the time of trial, which included, "Initiation of childcare expense apportionment and if the court modifies child support retroactively to the time of filing then the court should enter a retroactive childcare expense order requiring Anthony to pay a portion of those costs incurred by Amber for that same retroactive period of time." Then, at the onset of its analysis, the district court stated, "Based upon the stipulations made and the evidence adduced the court finds a material change in circumstances and will address the parties' claims for relief." However, later in the order, when addressing the childcare issue, the order states, as set forth in more detail previously, that "[t]here was no evidence of any material change regarding childcare expense since the Decree was entered; only the tit for tat." It concluded that since Anthony's income was less presently than at the time of the decree, it could not be a material change warranting an award of childcare expenses. Also, Anthony's move to Pennsylvania did not constitute a material change warranting an "initial award of childcare expenses." The court did not consider the change in Amber's employment status since the entry of the decree. The court stated that childcare "was not an issue at the time the Decree was entered; it was not awarded nor was it even mentioned." The court appeared troubled by the fact that "the parties bartered child support for day care at the time settlement was reached" and that "Amber's attorney certainly should have known the difference between child support and childcare and using an incorrect income amount to determine child support was improper." It concluded, "Bottom line, Amber now seeks to add something after the fact and also have it relate back in time without any showing of a material change. The court declines to do so."

[10-13] A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous

modification which was not contemplated when the prior order was entered. *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002). The paramount concern and question in determining child support, whether in the initial marital dissolution action or in proceedings for modification of decree, is the best interests of the child. *Id*. A change of circumstances not within the reasonable contemplation of the parties at the time of the decree may be the basis for modification of a decree. See *Albers v. Albers*, 213 Neb. 471, 329 N.W.2d 567 (1983). Although a parent may have contemplated incurring childcare expenses at some point in the future, many items within the realm of contemplation at the time of dissolution remain uncertain or speculative. See *Robbins v. Robbins*, 3 Neb. App. 953, 536 N.W.2d 77 (1995).

[14] This court has held:

> In determining whether to modify an award with respect to childcare expenses, this court has compared the need for work-related childcare at the time of the original decree with the need for such childcare at the time of the modification hearing. See, *Mace v. Mace*, 9 Neb. App. 270, 610 N.W.2d 436 (2000) (original decree did not mention childcare expenses, and trial court did not err in modifying decree to require contribution for childcare expenses by noncustodial parent where custodial parent had held jobs requiring childcare after original decree, did not require childcare at time of modification hearing, but testified that she may secure job necessitating childcare in future); *Robbins v. Robbins*, 3 Neb. App. 953, 536 N.W.2d 77 (1995) (mere fact that before original decree parties do not require childcare but anticipate future changes of employment and potential for childcare expenses to arise is not sufficient for holding that such expenses are reasonably contemplated).

*Gartner v. Hume*, 12 Neb. App. 741, 765, 686 N.W.2d 58, 79 (2004).

As in *Mace v. Mace*, 9 Neb. App. 270, 610 N.W.2d 436 (2000), the parties' July 2020 decree makes no mention of childcare expenses. The evidence at the modification trial included Amber's testimony that in 2020, she worked "one or two days [a] week . . . from 7 to 3" and, outside of those hours, she stayed with the children. However, at the time of trial, her work hours had increased to "40 hours a week." She testified that she arrives at work "[b]etween 8 and 8:30" and that while she "tr[ies] to get back by 5 o'clock," her return from work "[d]epends on the day."

Amber testified that Riley is in Fox's care from "8:30, until [Riley] goes to school" from "12 o'clock" to "3:30," and then "until anywhere between 5 and 6." She also stated that Callie is in daycare with Stankoski from "8, 8:30 to 5." Amber stated that on days where she is unable to leave work in time to pick up Callie from daycare at 5 p.m., Fox watches Callie until Amber is able to leave work. In addition to her testimony on the matter, Amber submitted "[d]aycare receipts" into evidence, which the district court received without objection from Anthony. The "[d]aycare receipts" included a statement signed by Fox stating that he charged Amber "$2880 for the year for daycare for Riley and Callie." The exhibits also included emails from Stankoski wherein she stated that Amber paid $5,926 in childcare expenses in 2021 and that she charges $25 per day per child in addition to a weekly $10 charge for each child. Anthony presented no evidence contesting Amber's claim for childcare expenses, and in fact, Anthony testified during cross-examination that he did not "have a problem" with contributing to childcare expenses.

Given the uncontested evidence demonstrating that Amber's work hours increased substantially since the time of the decree, thus impacting her childcare expenses, the district court abused its discretion when it declined to find the evidence supported a material change in circumstances related to childcare expenses.

## VI. CONCLUSION

For the foregoing reasons, we reverse the district court's decision declining to address childcare expenses and remand the matter with directions to apportion childcare expenses from the time of trial forward; any decision regarding a retroactive award is at the trial court's discretion based on the evidence adduced at trial.

REVERSED AND REMANDED WITH DIRECTIONS.