Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/02/2023 09:07 AM CDT

Eric C. Kotas, appellee, v. Jennifer
M. Barnett, formerly known as
Jennifer M. Kotas, appellant.

___ N.W.2d ___

Filed April 25, 2023.    No. A-22-399.

1. **Modification of Decree: Child Support: Appeal and Error.** Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, an appellate court will affirm the trial court's decision absent an abuse of discretion.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Pleadings: Judgments.** A determination as to whether a motion, however titled, should be deemed a motion to alter or amend a judgment depends upon the contents of the motion, not its title.

4. **Pleadings: Judgments: Time.** In order to qualify for treatment as a motion to alter or amend a judgment, a motion must be filed no later than 10 days after the entry of judgment and must seek substantive alteration of the judgment.

5. **Modification of Decree: Child Support: Proof.** A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.

6. **Modification of Decree: Child Support.** Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid,

good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent.

7. **Modification of Decree: Child Support: Proof.** The party seeking the modification has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification and that the best interests of the child are served thereby.

8. \_\_\_\_: \_\_\_\_: \_\_\_\_. Proof of a change of circumstances is not an optional element to a modification proceeding. Rather, proof of a material change of circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of new facts and circumstances.

9. **Modification of Decree: Child Support.** It is invariably concluded that a reduction in child support is not warranted when an obligor parent's financial position diminishes due to his or her own voluntary wastage or dissipation of his or her talents and assets and a reduction in child support would seriously impair the needs of the children.

10. \_\_\_\_: \_\_\_\_. An obligor parent's reduction in income does not warrant modification of child support where the reduction in income was attributable to the parent's personal wishes and not the result of unfavorable or adverse conditions in the economy, the parent's health, or other circumstances affecting earning capacity.

Appeal from the District Court for Saline County: RICKY A. SCHREINER, Judge. Reversed.

Linsey A. Camplin, of McHenry, Haszard, Roth, Hupp, Burkholder, Blomenberg & Camplin, P.C., for appellant.

David V. Chipman, of Monzón, Guerra & Chipman, for appellee.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Jennifer M. Barnett (Jennifer), formerly known as Jennifer M. Kotas, appeals from the order of the district court for Saline County, which terminated the child support obligation of Eric C. Kotas (Eric) and ordered the parties to equally divide all

reasonable and necessary direct child-related expenditures. For the reasons that follow, we reverse.

## BACKGROUND

Jennifer and Eric are the parents of one minor child, born in 2007. The parties married in 2007 and divorced in 2010, and they have shared joint legal and physical custody of the minor child since the divorce. The initial 2010 decree ordered Eric to pay Jennifer a monthly child support obligation of $42.64. In November 2012, the district court entered an order of modification increasing Eric's monthly child support obligation to $75. The 2012 modification also modified the parties' parenting plan so that parenting time alternates each week and runs from Sunday to Sunday. In September 2016, in a separate case, Eric was ordered to pay $250 per month in child support for two children from a different marriage. In December 2016, the district court entered an order of modification increasing Eric's monthly child support obligation in this case to $194.

On July 7, 2020, Jennifer filed a complaint for modification, requesting sole physical and legal custody of the minor child, a recalculation of child support, and reallocation of child-related expenses. With respect to child support, Jennifer alleged only that she was "requesting a change in custody that would increase [Eric's] obligation by more than ten percent in accordance with the Nebraska Child Support Guidelines." On July 24, Eric filed an answer in which he affirmatively alleged that "there have been no significant and material changes in the circumstances of the parties which warrant a modification of the Decree in this matter." In the alternative, "[i]f the Court finds that there has been a significant and material change," Eric counterclaimed for sole legal and physical custody and for an order "setting the financial obligations of the parties . . . as determined by the custodial placement set."

Trial on the complaint and counterclaim was held on January 10, 2022. Prior to trial, the parties came to an agreement

on all custody and parenting time matters. That agreement
was memorialized in a joint stipulation which narrowly modi-
fied the decree in that Eric was granted final decisionmak-
ing authority over education and Jennifer was granted final
decisionmaking authority over medical care. Additionally, the
parties agreed to split the cost of car insurance for the minor
child when he started driving, as the child was 14 years old
at the time and nearing driving age. The parties further stipu-
lated to provide the minor child with all prescribed medication
in a timely manner and to change the location and time of
parenting time transitions. Importantly, the joint stipulation
explicitly reaffirmed the physical custody and parenting time
arrangement as modified in the 2012 order of modification.
Pursuant to the joint stipulation, the only issues remaining
for trial were child support, child-related expenses, and attor-
ney fees. Jennifer and Eric were the only witnesses to testify
at trial.

Jennifer testified that she was not currently employed and
was last employed in 2016. Jennifer explained that she was
injured on the job in 2014 and was determined to be 100
percent disabled. Jennifer testified that she receives monthly
Social Security disability benefits which totaled $12,000 in
2019 and $12,192 in 2020. The parties generally agreed that
Jennifer's earning capacity should be set according to her
monthly disability benefit of $1,016.05. Eric argued that an
additional $328 per month in dependent benefits should also
be included, which would bring Jennifer's monthly earning
capacity to $1,344.05. Jennifer's total monthly income was set
at $1,268.63 for purposes of the 2016 modification. Whether
or not the additional $328 is included, there was no indica-
tion that Jennifer's earning capacity had materially changed
since the 2016 modification. The bulk of the evidence at trial
was devoted to alleged changes in Eric's income and earn-
ing capacity.

Eric testified that he was presently engaged in the occu-
pation of farming. Eric explained that he was previously

employed full time as a farmhand for another farmer but left that employment sometime in the "fall of 2016" to pursue self-employment opportunities in construction and farming. When asked about the reason for leaving that employment, Eric responded only that "[i]t was not a good atmosphere." For some time thereafter, Eric engaged in both farming and "handyman services" through his construction business. Eric gradually shifted to exclusively farming "[o]ver the course of the last few years" and had been farming full time for about a year at the time of trial. Eric testified that his farming operation consists of growing corn, soybeans, wheat, and alfalfa, and then selling those crops to "the local co-op."

Eric testified that he stopped the construction business sometime prior to 2020 because he "was too busy with the farm." Eric explained that his farm workload increased when he began farming additional land owned by his parents in 2020. When asked how he was compensated for farming that additional land, Eric initially testified that his parents paid him in "gifts." Furthermore, when asked how he is able to "make ends meet" in light of the "several years of losses as a farmer," he simply responded, "Gifts from my parents." Eric testified he had been receiving these gifts from his parents for "[t]wo to three years at least." Eric later testified that "[m]ost of the time" his parents actually compensated him with grain, but he added that "they do give me gifts here and there to help out." With regard to his income, Eric offered his 2018, 2019, and 2020 tax returns.

Eric's 2018 tax return shows $17,966 of income from his construction business, a $14,167 loss from his farming operation, and some other minor income, resulting in a total income of $4,505. Eric's 2019 tax return shows $5,771 of income from his construction business and a $10,604 loss from his farming operation, resulting in a net loss of $4,833. Eric's 2020 tax return shows no income from his construction business and a $9,140 loss from his farming operation. After carrying forward the $4,833 net loss from 2019,

Eric's 2020 tax return reflects a net loss of $13,973. Eric's 2020 tax return also included a 5-year tax history report which demonstrates that Eric's income consistently decreased from 2016 to 2020. In addition to the figures discussed above, that report reflects a total income of $38,825 in 2016 and $4,699 in 2017.

Jennifer testified that she believed Eric's bank statements indicate an earning capacity much higher than the income reflected in his tax returns. The bank statements Jennifer was referring to were admitted into evidence without objection as exhibit 37. Additionally, exhibit 42, which was admitted without objection as an aid to the court, contains an outline of deposits contained in exhibit 37.

Exhibit 37 consists of 158 pages of deposit, withdrawal, and debit transactions for one or more of Eric's bank accounts from May 2018 to June 2021. Throughout the exhibit, there are a number of unidentified deposits of various amounts ranging from $18 to $25,729. Exhibit 42 isolates those unidentified deposits and aggregates them by year. Exhibit 42 reflects a total of $79,052 in unidentified deposits in 2019, as well as a total of $109,963 in 2020. Based on exhibit 42, Jennifer argued that Eric's earning capacity was over $100,000 per year, or $8,646 per month.

Eric admitted that at least some of the unidentified deposits listed in exhibit 42 reflected the cash "gifts" he had been receiving from his parents. On redirect examination, Eric clarified that while the payments from his parents are among the deposits in exhibit 42, they do not account for the totality of those deposits. For example, Eric testified that a $25,729 deposit in January 2020 was proceeds from selling grain, which was already accounted for in Eric's tax returns. Similarly, Eric testified that a $10,343 deposit in April 2020 was proceeds from selling hay and that a $2,048 deposit in July 2020 was proceeds from selling cattle. Furthermore, Eric testified that a $15,000 deposit in July 2020 was a loan from Eric's parents he allegedly paid back in January 2021 and that a

$9,000 deposit in May 2020 was proceeds from a truck, the majority of which was promptly debited to cover the remaining balance of a loan on that truck.

For purposes of child support, Eric proposed that the court set his earning capacity at minimum wage because "[e]ven though the farming times have been hard," Eric believed that he was capable of earning at least minimum wage. Under Eric's proposal, Jennifer owed a monthly child support obligation of $33, but Eric ultimately requested that neither party be ordered to pay any child support. At the conclusion of Eric's testimony, the district court adjourned, and a journal entry from January 10, 2022, indicates that the court considered the matter submitted.

The district court eventually entered an order of modification on February 2, 2022. However, well prior to that, on January 12, Jennifer filed a motion to reconsider "the issues of child support and division of expenses as Ordered by this Court on or about January 11, 2022." Upon our initial review of this case, it was unclear as to what order Jennifer's motion referred, because the appellate record did not contain any order of the court from January 11. Thus, we issued an order to show cause seeking clarification on the timeline of events. In response thereto, counsel for Jennifer supplied an affidavit explaining that the district court announced its findings in a letter to the parties which was dated January 11, 2022. Attached to counsel's affidavit was a copy of that letter, which indeed contained the court's findings and directed counsel for Jennifer to prepare a proposed order that reflected the contents of the letter. Counsel further attested that she prepared and submitted such a proposed order, which was later signed by the district court and entered on February 2.

The February 2, 2022, order of modification terminated Eric's child support obligation and ordered the parties to equally divide child-related expenses. The court further ordered each party responsible for his or her own attorney fees. Attached to that order was a child support calculation

which set Jennifer's monthly income at $1,029, and Eric's monthly income was set at minimum wage. That calculation resulted in Eric's owing a monthly obligation of $1, which the court found to be "de minimus." The court included the following findings regarding the parties' dispute over Eric's income:

2. [Eric] is a farmer. While he previously supplemented his income with carpentry work, he left behind carpentry to focus on farming a year or two prior. . . . His 2018, 2019 and 2020 income tax returns show taxable income of $0.00. . . . In 2016, [Eric] had income in excess of $38,000.00 a year. The Court agrees that such a decline raises suspicions, particularly as it coincides with [Eric's] obligation to pay child support for not just one, but three children. [Eric] agrees that he should be imputed income at the minimum wage, for a monthly income of $1,560.00;

3. [Jennifer] argues that [Eric's] bank accounts show many four figure deposits, which, when averaged, yield a monthly income well in excess of the minimum. She has not, however, subjected these income amounts to examination by a professional accountant, nor has she subtracted expenses. The Court has reviewed numerous farm tax returns during its tenure, and is aware that farming often does not appear profitable from tax returns. It also understands that an analysis of income only will result in a distorted picture of a farm financial picture. . . . The bank accounts prove deposits, not expenditures. They are misleading and are disregarded by the Court.

On March 23, 2022, the district court held a hearing on Jennifer's January 12 motion to reconsider, and it entered on order overruling that motion on May 11. We note, however, that a different district court judge conducted the hearing on March 23, as the trial judge had retired subsequent to entering the order on February 2. Jennifer appealed.

## ASSIGNMENTS OF ERROR

Jennifer assigns that the district court erred in (1) finding that Eric's earning capacity should be reduced, (2) reducing Eric's child support obligation, (3) ordering the parties to equally divide child-related expenses, and (4) denying Jennifer's motion to reconsider.

## STANDARD OF REVIEW

[1-3] Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, we will affirm the trial court's decision absent an abuse of discretion. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. *Id.* When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

*Jurisdiction.*

Prior to addressing the merits of this case, we must briefly address the parties' dispute as to this court's jurisdiction. See *Bryson L. v. Izabella L.*, 302 Neb. 145, 921 N.W.2d 829 (2019). The notice of appeal in this case was filed on May 26, 2022, which was far more than 30 days after the district court's February 2 order of modification. On appeal, Eric suggests that Jennifer's January 12 motion to reconsider may not have operated to toll the time for appeal, such that Jennifer's appeal was untimely. We disagree.

[3,4] A determination as to whether a motion, however titled, should be deemed a motion to alter or amend a judgment depends upon the contents of the motion, not its title. *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019). In order to qualify for treatment as a

motion to alter or amend a judgment, a motion must be filed no later than 10 days after the entry of judgment and must seek substantive alteration of the judgment. See *id.* A motion to alter or amend a judgment filed after the announcement of a verdict or decision but before the entry of judgment shall be treated as filed after the entry of judgment and on the day thereof. Neb. Rev. Stat. § 25-1329 (Reissue 2016).

In the present case, the court announced its decision in a letter on January 11, 2022, and Jennifer's motion was filed the next day. Thus, Jennifer's motion will be treated as filed on February 2, when the order of modification was finally entered. Moreover, Jennifer's motion clearly seeks substantive alteration of that judgment. Accordingly, Jennifer's motion operated to toll the time for appeal until after the district court's May 11 order overruling that motion. See Neb. Rev. Stat. § 25-1912(3) (Cum. Supp. 2022). Thus, Jennifer's May 26 notice of appeal was timely, and we have jurisdiction over this appeal.

*Modification of Child Support.*

In her first and second assignments of error, Jennifer asserts that the district court erred in modifying Eric's child support obligation on the basis of a purported reduction in Eric's earning capacity. Jennifer argues that the reduction in income reflected by Eric's tax returns was a voluntary reduction in income based on Eric's personal wishes and did not demonstrate a corresponding decrease in Eric's earning capacity. Jennifer further emphasizes Eric's own testimony regarding cash gifts from his parents which were not reflected in his income tax returns. Altogether, Jennifer argues that Eric failed to prove a material change in his earning capacity, such that the district court erred in modifying Eric's child support obligation. We agree.

[5-7] A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when

the decree was entered. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). The party seeking the modification has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification and that the best interests of the child are served thereby. *Id.*

Jennifer's initial complaint for modification primarily alleged grounds to modify custody of the parties' minor child. That is, Jennifer alleged a number of material changes in circumstances regarding Eric's conduct as a parent and the living conditions at Eric's house, but there was no allegation of a change in the parties' income or earning capacity. Eric's answer and counterclaim is likewise lacking any allegation that there had been a material change in circumstances affecting the financial position of the parties. Rather, Eric affirmatively alleged that there had not been a material change of circumstance warranting modification. Only in the alternative, if the court found a basis to modify custody, did Eric request an order "setting the financial obligations of the parties . . . as determined by the custodial placement set."

While both Jennifer and Eric ostensibly requested a modification of child support in their pleadings, both requests were contingent upon a modification of custody. However, the parties subsequently stipulated to leave physical custody and parenting time unchanged. Once it was determined that there would not be a modification of physical custody or parenting time, the alleged change in circumstances warranting modification of child support evaporated. It is true that the parties' joint stipulation provided that "[t]he parties

agree a material change of circumstances has occurred since the entry of the Decree and Orders of Modification, which was not contemplated by the parties at the time the Orders were entered . . . ." However, the stipulation did not indicate the nature of such agreed upon change in circumstances as it related to child support. Rather, the parties apparently took for granted that Eric's income had changed materially, such that the only remaining questions were whether it had increased or decreased and by how much.

[8] In addressing a modification of custody, the Nebraska Supreme Court recently reiterated that "proof of a change of circumstances is not an optional element to a modification proceeding." *Weaver v. Weaver*, 308 Neb. 373, 388, 954 N.W.2d 619, 630 (2021). Rather, proof of a material change of circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances. *Id.* Likewise, modification of an existing child support order must be based on new facts and circumstances, and we are not bound by the parties' stipulation that such facts and circumstances exist. See *Bevins v. Gettman*, 13 Neb. App. 555, 560, 697 N.W.2d 698, 703 (2005) (noting "well-established authority" that stipulation of parties as to child support is not binding on court). See, also, *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991) (determination as to best interests of child is judicial decision based on evidence and not exclusively parental stipulation).

As mentioned above, the only change in circumstances affecting child support that was alleged in the pleadings was the contemplated change in custody which never materialized. The only other plausible change in circumstances that was discussed on the record was the purported change in Eric's earning capacity. In that regard, Jennifer argued that Eric's earning capacity had materially increased since the 2016 modification, whereas Eric argued that his earning capacity had materially decreased.

Importantly, nowhere in the district court's order of modification did it identify a material change in circumstances warranting modification of child support. Nevertheless, the court proceeded to analyze the parties' income and earning capacity for purposes of recalculating child support. We conclude it was an abuse of discretion to proceed to modification of the existing child support order without first finding a material change in circumstances. Thus, we examine the record to determine whether either party produced sufficient proof of a material change in Eric's earning capacity since the entry of the 2016 modification.

At trial, Jennifer's position was that Eric's monthly earning capacity had increased materially from $3,293 in 2016 to $8,646 at the time of trial. In support of that position, Jennifer provided exhibits 37 and 42, which purported to illustrate Eric's earning capacity through aggregate deposits into Eric's bank accounts. However, as the district court rightfully noted, Jennifer failed to subject those exhibits to examination by a professional accountant or otherwise explain the extent to which the deposits actually reflected income as opposed to some other transaction. Indeed, Eric specifically controverted a number of the largest deposits on the grounds that they lacked appropriate context or were already accounted for in Eric's tax returns. Accordingly, we agree with the district court that exhibits 37 and 42, without more, are misleading at best. Thus, we conclude that Jennifer failed to meet her burden to prove a material increase in Eric's earning capacity.

Eric's position at trial was that his monthly earning capacity had decreased materially from $3,293 in 2016 to minimum wage, or $1,560, at the time of trial. In support of that position, Eric provided his income tax returns from 2018, 2019, and 2020, which admittedly reflect a substantial decrease in his taxable income from 2016 to the time of trial. However, Jennifer's position, both at trial and now on appeal, is that Eric's income tax returns do not accurately reflect his earning capacity. In fact, Eric seemingly agreed that his tax

returns do not accurately reflect his earning capacity, as he admitted that he was capable of earning at least minimum wage despite reporting a net loss on his tax returns for 2 years straight. Thus, the ultimate question on appeal is whether, independent of his admittedly misleading tax returns, Eric met his burden to prove a material decrease in his income.

[9,10] It is invariably concluded that a reduction in child support is not warranted when an obligor parent's financial position diminishes due to his or her own voluntary wastage or dissipation of his or her talents and assets and a reduction in child support would seriously impair the needs of the children. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). In *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991), the Supreme Court concluded that an obligor parent's reduction in income did not warrant modification of child support where the reduction in income was attributable to the parent's personal wishes and not the result of unfavorable or adverse conditions in the economy, the parent's health, or other circumstances affecting earning capacity.

In the present case, there is no question that Eric's taxable income has consistently decreased each year since the 2016 modification. However, Eric's own testimony suggests that the precipitous decline in his taxable income was the result of voluntary reductions in income attributable to his personal wishes as opposed to some other circumstances affecting earning capacity. The record also suggests that Eric was able to counter that reduction in taxable income to some extent through additional "gifts" from his parents over the course of the last few years. We note that the record is devoid of any evidence as to the needs of the parties' minor child or the effect that the district court's modification of child support may have thereon. Moreover, we agree with the district court that the timing of Eric's reduction in income "raises suspicions," as it coincided with a significant increase in Eric's aggregate child support obligation.

In September 2016, Eric was ordered to pay $250 per month in child support in a separate case, and roughly 3 months later, Eric's monthly child support obligation in this case increased from $75 to $194. At that time, Eric was working full time as a farmhand and making $3,293 per month. Using that figure, Eric's aggregate monthly child support obligation increased from $75 for one child to $444 for three children. Right around the time of that increase, sometime in "fall of 2016," Eric left his full-time employment to pursue other ventures in self-employment. That career move resulted in a marked decrease in Eric's annual taxable income from $38,825 in 2016 to $4,699 in 2017. Thereafter, Eric's taxable income continued to decrease, as he eventually chose to stop the profitable construction business and focus exclusively on his unprofitable farming operation.

Under the circumstances of this case, we conclude that Eric failed to meet his burden to prove a material decrease in his monthly earning capacity. Eric's monthly earning capacity was $3,293 in 2016, and neither party produced sufficient evidence to reliably conclude that Eric's current earning capacity is materially more or less than that. While Eric's actual income has decreased since the 2016 modification, we conclude that decrease was a result of Eric's personal wishes to farm exclusively and does not amount to a material change in circumstances warranting modification of child support. See *Schulze v. Schulze, supra*.

Altogether, we conclude that the district court abused its discretion by proceeding to modify child support without first satisfying the threshold inquiry as to whether there was a material change in circumstances. Furthermore, we conclude that the record in this case does not support a material change in circumstances warranting modification of child support. Thus, we reverse the district court's modification of Eric's child support obligation and reinstate the child support obligation contained in the 2016 order of modification.

*Division of Child-Related Expenses.*

Jennifer next assigns that the district court erred in ordering the parties to equally share all reasonable and necessary direct child-related expenditures. As discussed above, the record failed to demonstrate a material change in the financial positions of the parties. Moreover, there was no evidence regarding the actual expenses incurred on behalf of the parties' minor child, let alone evidence that such expenses had materially changed since the 2016 modification. Without a material change in circumstances warranting modification of the existing cost-sharing arrangement, it was an abuse of discretion to modify the same. Thus, we reverse the district court's division of child-related expenses and reinstate the cost-sharing arrangement as it existed prior to these modification proceedings.

*Motion to Reconsider.*

Lastly, Jennifer assigns that the district court erred in denying her motion to reconsider. Jennifer's motion sought reconsideration of "the issues of child support and division of expenses." Having found the district court erred in finding a material change in circumstances warranting modification, we need not address Jennifer's last assigned error. See *In re Adoption of Yasmin S.*, 308 Neb. 771, 956 N.W.2d 704 (2021) (appellate court not obligated to engage in analysis not necessary to adjudicate case).

## CONCLUSION

For the foregoing reasons, we reverse the district court's modification of Eric's child support obligation and reinstate the child support obligation as calculated in the 2016 order of modification. Likewise, we reverse the district court's modification of the parties' cost-sharing arrangement and reinstate the cost-sharing arrangement as it existed prior to these proceedings.

Reversed.