Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/12/2019 09:08 AM CDT

- 70 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
THOMPSON v. MILLARD PUB. SCH. DIST. NO. 17
Cite as 302 Neb. 70

Kim M. Thompson, an individual, appellant,
v. Millard Public School District No. 17
and Millard Public Schools Board
of Education, appellees.

___ N.W.2d ___

Filed January 18, 2019.    No. S-18-140.

1. **Judges: Recusal.** A recusal motion is initially addressed to the discretion of the judge to whom the motion is directed.
2. \_\_\_\_: \_\_\_\_. A judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.
3. **Judges: Recusal: Presumptions.** A party alleging that a judge acted with bias or prejudice bears a heavy burden of overcoming the presumption of judicial impartiality.
4. **Rules of the Supreme Court: Judges: Witnesses: Words and Phrases.** For purposes of Neb. Rev. Code of Judicial Conduct § 5-302.11(A)(2)(d), a material witness is one who can testify about matters having some logical connection with the consequential facts, especially if few others, if any, know about those matters; a person who is capable of testifying in some relevant way in a legal proceeding.
5. **Judges: Recusal: Waiver.** A party is said to have waived his or her right to obtain a judge's disqualification when the alleged basis for the disqualification has been known to the party for some time, but the objection is raised well after the judge has participated in the proceedings.
6. **Judges: Recusal: Time.** The issue of judicial disqualification is timely if submitted at the earliest practicable opportunity after the disqualifying facts are discovered.
7. **Judges: Recusal: Appeal and Error.** The three-factor special harmless error test in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S.

- 71 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
THOMPSON v. MILLARD PUB. SCH. DIST. NO. 17
Cite as 302 Neb. 70

847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988), should be used for determining when vacatur is the appropriate remedy for a trial judge's failure to recuse himself or herself when disqualified under the Nebraska Revised Code of Judicial Conduct.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed in part, and in part vacated and remanded with directions.

Abby Osborn and Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Duncan A. Young, Jeff C. Miller, and Keith I. Kosaki, of Young & White Law Office, for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## INTRODUCTION

Kim M. Thompson resigned from her employment with a school district after the district, asserting she had been insubordinate, offered her the option to resign in lieu of termination. Thompson then filed suit against Millard Public School District No. 17 and its school board (collectively Millard). In the midst of her employment discrimination suit against Millard, the district court judge assigned to the case became aware that due to a new claim asserted after counsel appeared for Thompson, his brother-in-law was a potential witness. At that point, Thompson moved for recusal and Millard moved for summary judgment on Thompson's remaining claims. The district court overruled the motion to recuse and granted summary judgment on all remaining claims. Because the judge's brother-in-law was likely to be a material witness, the judge should have recused himself. We vacate in part, and remand for a new summary judgment hearing with a different judge.

## BACKGROUND

Thompson, a former project manager of Millard, had a consensual extramarital affair with an independent contractor for Millard. After their tumultuous breakup, the contractor's wife sent a complaint to Millard's superintendent about privacy and safety concerns for her children due to Thompson's online and offline behavior. In July 2014, following an insubordinate act, Millard requested Thompson's resignation in lieu of termination of her employment.

Acting without counsel, Thompson originally brought suit against Millard claiming (1) retaliation, (2) hostile work environment, (3) false light/invasion of privacy, (4) intentional infliction of emotional distress, and (5) breach of contract. Millard moved for partial summary judgment on claims (3) through (5). The district court granted summary judgment on those claims. After they were disposed, Thompson obtained counsel. Millard then moved for summary judgment on the retaliation and hostile work environment claims.

At the summary judgment hearing, off the record, the district court judge became aware that his brother-in-law, Stephen Mainelli, was a potential witness for Thompson. Thompson moved for recusal.

At the recusal hearing, Millard stated that it was undisputed that Mainelli was hired in January 2014 as a project manager and assumed the same job description as Thompson. Thompson argued she intended to call Mainelli as a witness, because his testimony would be relevant to show other areas or examples of discrimination. Millard argued that even if Mainelli was a witness, he would not be competent to testify, because there was no issue of his hiring, salary, or Thompson's firing about which he could competently testify. The court took the matter under advisement.

While the recusal motion remained under advisement, Thompson amended her complaint and added a claim under the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (2012). The amended complaint alleged as follows:

- 73 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
THOMPSON v. MILLARD PUB. SCH. DIST. NO. 17
Cite as 302 Neb. 70

In December, 2013, [Millard] hired [Mainelli] as project manager to begin working January 31, 2014, which was [Thompson's] same position;

. . . His rate of pay at hire was $96,163. [Thompson's] salary while being in the job 8 and ½ years of [sic] $88,985;

. . . The failure to pay [Thompson] the same sum of money as male employees in a similar position is a willful violation of the Equal Pay Act . . . .

Shortly after the complaint was amended, the court issued an order denying the motion to recuse. Reasoning that because Millard would not call Mainelli as a witness and the outcome of Thompson's litigation would not impact Mainelli, the court concluded that the judge's impartiality would not be questioned under an objective standard of reasonableness. The court overruled the motion for recusal.

Millard moved for summary judgment on the Equal Pay Act claim. Thompson renewed her motion to recuse. At the summary judgment and renewed recusal hearing, Thompson argued that Mainelli's testimony would be relevant for the comparison of qualifications and finding a pretextual motive for hiring Mainelli at a higher pay. Millard argued that Mainelli's testimony was not relevant, because he could not testify to the decisionmaking process behind his employment. From the bench, the court overruled the renewed motion for recusal.

In analyzing the merits of the Equal Pay Act claim, the court compared both Thompson's and Mainelli's work experiences. The court extensively described Mainelli's 38 years of construction industry experience. The court stated that Mainelli had "exemplary professional qualifications" and that Thompson's former supervisor knew Mainelli had "a considerable amount of skill and a depth of experience and technical knowledge." Yet when the court discussed Thompson's qualifications, it summarized her 15 years of experience in two sentences. The

- 74 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
THOMPSON v. MILLARD PUB. SCH. DIST. NO. 17
Cite as 302 Neb. 70

judge granted Millard's motions for summary judgment on the three remaining claims.

Thompson filed a timely appeal, which we moved to our docket.[1]

## ASSIGNMENTS OF ERROR

Thompson assigned, condensed and restated, that the district court erred in (1) failing to recuse himself, (2) applying the prohibited market forces theory, (3) failing to find a dispute of material fact that Millard retaliated against Thompson for engaging in protected activity, and (4) failing to find a dispute of material fact that Millard violated Thompson's right to be free from discrimination, harassment, and a hostile work environment.

## STANDARD OF REVIEW

[1] A recusal motion is initially addressed to the discretion of the judge to whom the motion is directed.[2]

## ANALYSIS

### Appearance of Impartiality

[2,3] A judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.[3] A party alleging that a judge acted with bias or prejudice bears a heavy burden of overcoming the presumption of judicial impartiality.[4]

Thompson argues that because Mainelli was listed as a witness and he was the comparator for the Equal Pay Act claim, a reasonable person would question the judge's impartiality

---

[1] Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

[2] *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018).

[3] *Id.*

[4] *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014).

- 75 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
THOMPSON v. MILLARD PUB. SCH. DIST. NO. 17
Cite as 302 Neb. 70

and the judge should have recused himself. Thompson contends that before the events with the contractor came to light, Thompson's supervisor had been grooming her to take over his job; but afterward, a decision was made to hire Mainelli and groom him to take over that position and terminate Thompson's employment. This, she argues, was by itself sufficient to demonstrate that an objectively reasonable person would question the judge's impartiality. She also contends that the judge's failure to recuse is not harmless error and that the cause must be remanded for assignment to a new judge to erase the taint of bias.

However, Thompson conceded at oral argument that summary judgment on Thompson's original claims (3) through (5) was proper and unaffected by the later development regarding the judge's brother-in-law. Therefore, in determining whether recusal was mandatory and how to remedy its denial, we discuss recusal only in relation to the remaining claims of retaliation, a hostile work environment, and the Equal Pay Act.

Judicial disqualification is codified under Neb. Rev. Code of Judicial Conduct § 5-302.11. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances."[5] One specific circumstance that requires a judge to disqualify himself or herself is when a person within the "fourth degree of relationship" to the judge, the judge's spouse, or the judge's domestic partner is likely to be a material witness in the proceeding.[6]

Neither party disputes that Mainelli was within the fourth degree of relationship to the judge. Under the terminology section of the judicial code, a "fourth degree of relationship" includes brothers and sisters. During the first motion for recusal, Thompson clarified on the record that the judge's

---

[5] § 5-302.11(A).

[6] See § 5-302.11(A)(2)(d).

- 76 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
THOMPSON v. MILLARD PUB. SCH. DIST. NO. 17
Cite as 302 Neb. 70

wife is Mainelli's sister. Because the judge's wife is in a fourth degree relationship with Mainelli, so is the judge.[7]

[4] Although Nebraska case law has discussed when a judge is a material witness for purposes of being compelled to testify regarding a case over which she or he was or had been presiding,[8] we have not addressed a situation where a witness related to the judge is a material witness, such that recusal would be mandatory under § 5-302.11(A)(2)(d). The judicial code does not define "material witness." Black's Law Dictionary defines material witness as "[a] witness who can testify about matters having some logical connection with the consequential facts, esp. if few others, if any, know about those matters; a person who is capable of testifying in some relevant way in a legal proceeding."[9] We adopt this definition for purposes of § 5-302.11(A)(2)(d).

This definition appears consistent with decisions from other states which have considered disqualification of a judge where the judge has a relationship with someone who is a witness or has an interest in the case. The Louisiana Supreme Court, in *State v. Daigle*,[10] reasoned that a judge should have recused himself in a capital murder trial when the victim's widow had a longtime working relationship with the judge, they were social media friends, and she was designated as a "penalty phase witness." In *People v. Suazo*,[11] the Supreme Court of

---

[7] See *Morton v. Benton Publishing Co.*, 291 Ark. 620, 727 S.W.2d 824 (1987) (by affinity, judge was in same degree of relationship to wife's relative as wife was by consanguinity).

[8] See, *State v. Sims*, 272 Neb. 811, 725 N.W.2d 175 (2006); *Village of Exeter v. Kahler*, 9 Neb. App. 1, 606 N.W.2d 862 (2000).

[9] Black's Law Dictionary 1839 (10th ed. 2014). See, also, *Rubashkin v. United States*, Nos. 13-CV-1028-LRR, 08-CR-1324-LRR, 2016 WL 237119 (N.D. Iowa Jan. 20, 2016).

[10] See, *State v. Daigle*, 241 So. 3d 999, 1000 (La. 2018) (analyzing recusal under Due Process Clause of 14th Amendment using framework from *Rippo v. Baker*, ___ U.S. ___, 137 S. Ct. 905, 197 L. Ed. 2d 167 (2017)).

[11] See *People v. Suazo*, 120 A.D.3d 1270, 992 N.Y.S.2d 138 (2014).

- 77 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
THOMPSON v. MILLARD PUB. SCH. DIST. NO. 17
Cite as 302 Neb. 70

New York, Appellate Division, remanded a hearing to a different judge when the original judge was the trier of fact and had to determine the credibility of a detective who was married to the judge's law clerk. The appellate court reasoned that the judge should have recused himself to maintain the appearance of impartiality. In *Ex parte Jackson*,[12] the Supreme Court of Alabama reasoned that a judge's brother's affiliation as a "director" of the defendant's bank, even though the legal relationship of the bank and brother may not be true, was sufficient to reasonably question the judge's impartiality and that the judge should have recused himself. We find these cases persuasive and consistent with this definition of a material witness.

Mainelli's testimony would have a logical connection and relevance to the Equal Pay Act claim. Mainelli was the sole comparator for the Equal Pay Act claim and potentially would have relevant information of the hiring process. From the hiring process and salary determination, as well as the testimony of his experience and qualifications for the job, Mainelli's testimony was likely to make him a material witness. Contrary to Millard's argument that Mainelli was simply one of 3,000 full- and part-time employees of Millard, Mainelli was the only employee who shared Thompson's job. Out of Millard's 3,000 employees, the only employees whose experiences and qualifications were relevant to the Equal Pay Act claim were Thompson and Mainelli. Thus, Mainelli's testimony would be relevant and have a logical connection to the Equal Pay Act claim, making him likely to be a material witness, such that one would reasonably question the judge's impartiality. Therefore, § 5-302.11(A)(2)(d) mandated disqualification of the judge.

## TIMELINESS

[5,6] Because the judicial code mandated disqualification of the judge, we must determine if Thompson waived her right to

---

[12] See *Ex parte Jackson*, 508 So. 2d 235 (Ala. 1987).

- 78 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
THOMPSON v. MILLARD PUB. SCH. DIST. NO. 17
Cite as 302 Neb. 70

obtain disqualification. A party is said to have waived his or her right to obtain a judge's disqualification when the alleged basis for the disqualification has been known to the party for some time, but the objection is raised well after the judge has participated in the proceedings.[13] The issue of judicial disqualification is timely if submitted at the earliest practicable opportunity after the disqualifying facts are discovered.[14]

Thompson moved for recusal at the earliest practicable opportunity. The earliest opportunity to request recusal was after the judge told the parties, at the summary judgment hearing, that Mainelli was his brother-in-law. At that point, Thompson did so. After Thompson added the Equal Pay Act claim to the complaint, specifically naming Mainelli as the comparator, she renewed her motion to recuse. Not only did Thompson submit her motion to recuse at the earliest practicable opportunity, but she renewed the motion at each practicable opportunity. Thus, Thompson did not waive her right to obtain judicial disqualification.

## Appropriate Remedy

[7] Because the judge's impartiality might reasonably be questioned and Thompson did not waive her right to obtain disqualification, we analyze whether vacatur is the appropriate remedy under the three-factor special harmless error test in *Liljeberg v. Health Services Acquisition Corp.*[15] The *Liljeberg* test should be used for determining when vacatur is the appropriate remedy for a trial judge's failure to recuse himself or herself when disqualified under the Nebraska Revised Code of Judicial Conduct.[16] In *Liljeberg*, "the Court considered three factors: (1) the risk of injustice to the parties in the particular

---

[13] *Tierney v. Four H Land Co.*, 281 Neb. 658, 798 N.W.2d 586 (2011).

[14] *Id.*

[15] *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988).

[16] See *Tierney, supra* note 13.

- 79 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
THOMPSON v. MILLARD PUB. SCH. DIST. NO. 17
Cite as 302 Neb. 70

case, (2) the risk that the denial of relief will produce injustice in other cases, and (3) the risk of undermining the public's confidence in the judicial process."[17]

As we noted in *Tierney v. Four H Land Co.*,[18] we first consider the third factor, because it is the most important. In this case, the risk of undermining the public's confidence in the judicial process is high. Although the judge did inform the parties of his relationship with Mainelli, the circumstances changed once Thompson added the Equal Pay Act claim. At that point, the judge was conscious of the role Mainelli could play in the litigation.

As the U.S. Supreme Court said in a somewhat comparable factual situation, "These facts create precisely the kind of appearance of impropriety that [the federal judicial code] was intended to prevent."[19] When Thompson first moved to recuse the judge, the Equal Pay Act claim had not yet been asserted. At that point, there was not an appearance of impartiality, because Mainelli would not have been relevant for the retaliation or hostile work environment claims. But once Thompson added the Equal Pay Act claim, Mainelli became highly relevant to the litigation. At that point, the judge's impartiality was reasonably questioned.[20] The judge's impartiality was questioned further when he evaluated and compared his brother-in-law's experience, qualifications, and hiring process with Thompson. The risk of undermining the public's confidence in the judicial process is simply too high under these circumstances.

The risk to future litigants will be lessened by vacatur. Although this particular circumstance is rarely seen, when the circumstance does appear, as it does here, it imports a

---

[17] *Id*. at 670, 798 N.W.2d at 595.

[18] See *id.*

[19] *Liljeberg, supra* note 15, 486 U.S. at 867.

[20] See *Liljeberg, supra* note 15 (analyzing when judge should have become aware and did become aware of fiduciary conflict which raised appearance of impropriety).

- 80 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
THOMPSON v. MILLARD PUB. SCH. DIST. NO. 17
Cite as 302 Neb. 70

reasonable question of the judge's impartiality. This case will prevent injustice in future cases by encouraging judges to more carefully examine possible grounds for disqualification. "Thus, under *Liljeberg*, the lower court's judgment must be vacated unless the risk of unfairness to the parties cautions against it."[21]

Regarding the fairness to these particular litigants, the district court's analysis of the merits suggests a greater risk of unfairness in upholding the judgment than in directing a new judge to review the issues. The court's lengthy analysis of Mainelli's experience and qualifications in the summary judgment order is suggestive. Millard made no showing of special hardship by reason of reliance on the original judgment. "There is little to lose and much to be gained by letting a different judge examine the [party's] motions for summary judgment."[22] Under the *Liljeberg* test, vacatur is the appropriate remedy in this case.

Because an analysis on the merits would not erase the taint of bias, we express no opinion on the merits of the remaining claims. Therefore, we do not address Thompson's other assignments of error. Our decision affects only those orders made after Thompson amended the complaint to add the Equal Pay Act claim.

## CONCLUSION

Therefore, we affirm the judgment to the extent of the claims disposed before the assertion of the Equal Pay Act claim. We vacate the judgment regarding the disposition of the retaliation, hostile work environment, and Equal Pay Act claims and remand the cause for a new summary judgment hearing before another judge to be appointed by this court.

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED WITH DIRECTIONS.

---

[21] *Tierney, supra* note 13, 281 Neb. at 672, 798 N.W.2d at 597.

[22] *Id*. at 672-73, 798 N.W.2d at 597.